UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | &#124; | CR 04-MJ-123 (JGL) |
| Plaintiff, | &#124; | |
| vs. | &#124; | **DEFENDANT'S POSITION WITH** |
| | &#124; | **RESPECT TO SENTENCING FACTORS** |
| WINSTON WENDALL BORDEN, | &#124; | |
| Defendant. | &#124; | |

_____

Defendant Winston Borden, through his undersigned counsel, offers the following memorandum setting forth his position with respect to the sentencing factors relevant to his resentencing scheduled for March 29, 2005.

On June 8, 2004, Defendant Winston Borden pled guilty to three counts of misdemeanor failure to file income tax returns for the tax years 1997, 1998 and 1999. Borden was convicted on stipulated facts of not filing tax returns in 2000 through 2002 following a court trial on June 22, 2004. On October 27, 2004, this Court sentenced Borden to serve consecutive sentences totalling 27 months for the six misdemeanor offenses.

In arriving at its sentence, the Court characterized the case as a "tragedy." Tr. 85. Finding the offense conduct "inexplicable," the Court expressly rejected the government's suggestion that Borden's actions were financially motivated, stating:

> I don't share Mr. Cheever's view that greed was the driving force here. I think it was
> - - it's more complex than that.

*Id.*

Both the Court and the parties acknowledged that mandatory application of the sentencing

guidelines was the driving force behind the case's convoluted procedural posture. Tr. 85. Ultimately, the Court expressed a sense of duty to follow the guidelines while, at the same time, sentencing Borden to the bottom of the guideline range " in response to both [Borden's] public service and [the Court's] overall sense of what occasioned these six separate violations of law." Tr. 91.

While this case was pending on appeal to the district court, the Supreme Court issued its landmark decision in *United States v. Booker*, ___ U.S. ___, 125 S.Ct. 738, ___ L.Ed.2d ___ (2005). *Booker* declared portions of the sentencing guidelines unconstitutional and rendered the surviving guidelines merely advisory. In the wake of *Booker*, Courts are no longer bound to blindly follow the guidelines but rather need only consult and take them into account when sentencing. 125 S.Ct. at 767. Consequently, the guideline range has become just one of many factors for the Court to consider in arriving at a fair and just sentence in the post-*Booker* era.

The touchstone for all federal sentences now is 18 U.S.C. § 3553(a), which requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." The statutory purposes of sentencing are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

The Court must also consider the nature and circumstances of the offense, the defendant's

history and characteristics, the kinds of sentences available, the need to avoid unwanted sentence disparities among similarly situated defendants, and the need to provide restitution.  18 U.S.C. § 3553(a)(1), (3), (4), (6) and (7).  An examination of these factors reveals that a sentence well below the 27-month term previously imposed is warranted.

    1.  The Nature and Circumstances of the Offense

  Borden was neither charged with nor convicted of felony tax evasion.  Instead, his convictions are all misdemeanors.

  Borden voluntarily cooperated throughout the government's lengthy investigation during which he was told by the investigating agent that the only conduct being criminally investigated concerned tax years 1997 through 1999.  The government expanded its investigation to encompass 2000 through 2002 only after Borden scheduled a straight plea to admit each of the counts contained in the original indictment.  As the court is keenly aware, the additional charges served to increase Borden's guideline range by six months due to a guideline amendment affecting tax years 2001 and thereafter.

  While all tax violations are serious, the seriousness of Borden's offense is mitigated both by the lack of any aggravating factors and the absence of any intent to defraud the IRS.  As the Court itself has observed, Borden's actions are "inexplicable."  "Under § 3553(a) and the decisions of the Supreme Court, a sentencing court may properly consider a defendant's motive." *United States v. Ranum*, ___ F.Supp.2d ___, 2005 WL 161223, *5 (E.D.Wis. Jan. 15, 2005).

  Borden's inability to attend to personal matters, including filing timely tax returns, springs from deeply rooted psychological and organic brain conditions, both of which were diagnosed by and described in great detail at the evidentiary hearing  preceding sentencing by Dr. Karen

Bruggemeyer. The Court acknowledged Dr. Bruggemeyer's expertise and the government offered no contradictory evidence or expert rebuttal. Although the Court declined to depart downward for an extraordinary physical impairment, the uncontraverted evidence remains that Borden's condition had a significant bearing on his offense conduct. The Court concluded as much when it sentenced Borden to the lowest end of the guideline range available on October 27, 2004 based on its "overall sense of what occasioned these separate violations of law." Tr. 91.

For all of these reasons, the nature of the offense falls far short of that which typically results in a 27-month sentence. Accordingly, the Court should exercise its discretion to put the nature of the offense in context rather than blindly adhering to the guideline range.

        2.        The Defendant's History and Character

Aside from his offense conduct, Borden's history and character are overwhelmingly positive. He has no prior criminal record, a solid employment history and has been a devoted and caring father. He has a lengthy history of public service, which the Court alluded to in imposing its original sentence. Tr. 91.

Numerous courts in the wake of *Booker* have placed great weight on letters received from friends, family and business associates attesting to a defendant's good character. *See, e.g., United States v. Kuhn*, 351 F.Supp.2d 676, 706 (E.D.Mich. 2005)(citing "compelling" letters while imposing 6 months of community confinement instead of 21 to 27-month sentence called for by the guidelines); *United States v. Ranum*, 353 F.Supp.2d 984, 991 (E.D.Wis. 2005)(relying in part on letters attesting to the defendant's good character in arriving at a sentence of a year and a day despite a guideline range of 37 to 46 months); *United States v. Myers*, 353 F.Supp.2d 1026, 1031 (S.D.Iowa 2005)(sentencing defendant to 3 months probation for possessing a sawed-off shotgun

notwithstanding guideline range of 20-30 months).

Here, The Court received 70 separate letters from a "wide cross section of people . . . all of whom expressed the highest possible opinion of [Borden]." Tr. 55, 91. Many of those letters offer anecdotal evidence of Borden's repeated willingness to go out of his way to help others in need. In accordance with § 3553(a), the Court should take such history and personal characteristics into account in crafting an appropriate sentence for Borden.

A defendant's age is another factor that is "plainly relevant" to post-*Booker* sentencing. *United States v. Nellum*, 2005 WL 300073, *3 (N.D.Ind. Feb. 3, 2005). Borden is 61 years old. Citing data compiled by the United States Sentencing Commission regarding the likelihood of recidivism for older offenders, the *Nellum* court concluded that "positive correlation between age and recidivism is impossible to deny." *Id.* at 3. According considerable weight to the fact that Nellum was 57 at the time of his sentencing, that court imposed a sentence of about one-half of that called for by the guidelines. Here also, the Court should take Borden's age into account in recalculating an appropriate sentence.

Borden's serious medical problems also bear noting. At the October 27, 2004 sentencing hearing, the Court agreed with Borden's treating psychiatrist that Borden's depression, cognitive decline and alcoholism all require ongoing treatment. Tr. 87. Prior to *Booker*, serious medical conditions became relevant to the sentencing calculus only if they were shown to be truly extraordinary. *See* U.S.S.G. § 5H1.4. *Booker*, however, "requires judges to impose sentences that . . . effectively provide the defendant with needed medical care." 125 S.Ct. at 765. Although Borden currently benefits from his ongoing participation in the DAP program at the Yankton FPC, his serious and degenerative cognitive and emotional issues would undoubtedly be better treated

outside of the prison context.

### 3. The Needs of the Public

Borden is not a danger to society. There is no public benefit by requiring him to serve a lengthy prison sentence of the duration usually reserved for felons. The combination of Borden's voluntary statements to the media and the highly-publicized fact of his ongoing confinement have satisfied any need to promote public respect for and compliance with federal tax laws.

Moreover, Borden's ability to pay taxes, penalties and interest ordered by the Court as a condition of his sentence will be enhanced by reducing the length of his present incarceration. Although the precise amount of the tax obligations remains to be quantified, the Court found the tax loss was between $200,000 and $325,000. Clearly, Borden cannot make any meaningful progress towards satisfying such an obligation while he remains in prison. Since 18 U.S.C. § 3553(a)(7) requires the Court to consider the need to provide restitution, that factor, by analogy, also militates in favor of a reduce period of incarceration in this case.

## CONCLUSION

No longer shackled by the mandatory restraints of the pre-*Booker* guidelines, this Court now enjoys both the freedom and obligation to consider the statutory purposes of sentencing and the myriad of factors made relevant by § 3553 in arriving at a fair and just sentence in this matter. The nature and circumstances of the offense, Borden's history and character, and the needs of the public uniformly suggest that a sentence well below the 27-month term of imprisonment that was originally imposed is warranted.

Respectfully Submitted,

Dated: March 23, 2005　　　　　**KELLEY & WOLTER, P.A.**


s/ Douglas A. Kelley
Douglas A. Kelley, #54525
Steven E. Wolter, #170707
Francis X. Hermann, #4443X
Centre Village Offices, Suite 2530
431 South Seventh Street
Minneapolis, MN  55415
(612) 371-9090

Attorney for Defendant Borden